```
 1  NAVI DHILLON (SBN 279537)
    navidhillon@paulhastings.com
 2  PETER C. MEIER (SBN 179019)
    petermeier@paulhastings.com
 3  CHRISTOPHER J. CARR (SBN 184076)
    chriscarr@paulhastings.com
 4  LUCAS GRUNBAUM (SBN 314180)
    lucasgrunbaum@paulhastings.com
 5  PAUL HASTINGS LLP
 6  101 California Street, 48th Floor
    San Francisco, California 94111
 7  Telephone:  (415) 856-7000
 8
    HARIKLIA KARIS (pro hac vice forthcoming)
 9  hkaris@kirkland.com
    ROBERT B. ELLIS (pro hac vice forthcoming)
10  rellis@kirkland.com
    VANESSA BARSANTI (SBN 292103)
11  vanessa.barsanti@kirkland.com
    KIRKLAND & ELLIS LLP
12  300 North LaSalle
    Chicago, IL 60654
13  Telephone: (312) 862-2000
14
15  Attorneys for Movant
    PACIFIC BELL TELEPHONE COMPANY
16
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY,<br><br>　　　　　Movant,<br><br>　　v.<br><br>MARINE TAXONOMIC SERVICES, LTD.,<br><br>　　　　　Respondent. | CASE NO.  **'23 CV1747 DMS KSC**<br><br>**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>Hearing Date:　TBD<br>Time:　　　　　TBD<br>Judge:　　　　　TBD<br>Time:　　　　　TBD<br><br>Underlying Litigation:<br>2:21-cv-00073-MCE-JDP<br>United States District Court<br>Eastern District of California |

MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

## **TABLE OF CONTENTS**

Page

**I.** INTRODUCTION ...............................................................................................1

**II.** BACKGROUND ................................................................................................2

**III.** ARGUMENT .....................................................................................................5

**IV.** CONCLUSION ..................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akkawi v. Sadr*,
  2022 WL 4484056 (E.D. Cal. Sept. 27, 2022) .................................................. 6, 7

*Amazing Ins., Inc. v. DiManno*,
  2020 WL 5440050 (E.D. Cal. Sept. 10, 2020) ..................................................... 6

*Bird v. Wells Fargo Bank*,
  2017 WL 1213425 (E.D. Cal. Mar. 31, 2017) ...................................................... 7

*Bofi Fed. Bank v. Erhart*,
  2016 WL 1644726 (S.D. Cal. Apr. 26, 2016) ....................................................... 6

*Hall v. Marriott Int'l, Inc.*,
  2021 WL 1906464 (S.D. Cal. May 12, 2021) .................................................. 6, 7

*HI.Q, Inc. v. ZeetoGroup, LLC*,
  2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) .................................................... 2

*Moore v. Chase, Inc.*,
  2015 WL 4393031 (E.D. Cal. July 17, 2015) ....................................................... 6

*In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party Subpoena*,
  2022 WL 1478914 (E.D. Cal. April 7, 2022) ................................................... 2, 5

*Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC*,
  2020 WL 4336296 (S.D. Cal. July 28, 2020) ....................................................... 5

**Statutes**

42 U.S.C. § 6972(a)(1)(B) ......................................................................................... 2

Health & Safety Code § 25249.5, et seq. ................................................................. 2

**Rules**

Federal Rule of Civil Procedure 45(d)(2)(B)(i) ........................................................ 5

**Other Authorities**

first amendment ................................................................................................5, 6, 7

*Wall Street Journal* ...................................................................................................1, 3

*Wall Street Journal* articles............................................................................................7

Pacific Bell Telephone Company (Pacific Bell) respectfully submits this Memorandum of Points and Authorities in support of its Motion for an order compelling Marine Taxonomic Services, Ltd. (MTS) to comply with a document subpoena.

## I.  INTRODUCTION

Pacific Bell moves this Court to enforce a subpoena seeking information directly relevant to a lawsuit filed by the California Sportfishing Protection Alliance (Plaintiff) in the Eastern District of California.  Plaintiff alleges that lead being released from telecom cables in Lake Tahoe cause adverse health and environmental impacts.  Pacific Bell strongly disputes those allegations.  Nevertheless, MTS's actions sparked the underlying litigation.  Indeed, by Plaintiff's counsel's own admission, MTS and its principals "brought [the case] to us on a platter."  Ex. F to the Declaration of Navi Singh Dhillon ("Dhillon Decl.").

In November 2021, the parties to the underlying lawsuit entered into a voluntary settlement providing for the removal of certain Lake Tahoe cables.  Pacific Bell agreed to remove the cables to avoid the costs and burdens of litigation.  After the settlement agreement was negotiated and reduced to a consent decree, but before the cables were removed, MTS entered into a contract with the Environmental Defense Fund to begin sampling and testing other lead-clad cables at sites across the country.  In July of 2023, the *Wall Street Journal* relied on MTS's testing for a series of articles about alleged health risks arising from lead-clad cables in Lake Tahoe and elsewhere.  Following the publication of the *Journal* articles, Pacific Bell exercised its contractual right to terminate the consent decree, which led to the reopening of the lawsuit.  Since the lawsuit reopened, both parties have requested a trial in 2024 with a schedule that contemplates completing fact discovery in the summer of 2024.  Karis Decl., Exs. 9-10.

On August 10, Pacific Bell served MTS with a subpoena for documents, communications, and information related to its sampling and testing of lead-clad

cables. Dhillon Decl., Ex. A. The compliance deadline passed three weeks ago, on August 24, 2023, and MTS failed to provide a substantive response.

Even after the deadline passed, Pacific Bell made multiple efforts to confer in good faith with MTS to avoid motion practice, including a letter sent September 5 and emails sent September 11 and September 14. Dhillon Decl., Exs. B-C. Those efforts were unsuccessful. As of this writing, MTS has not produced a single document. Dhillon Decl. at ¶10.

As explained more fully below, Pacific Bell respectfully requests that the Court grant this Motion. *See In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party Subpoena*, 2022 WL 1478914, at *3 (E.D. Cal. April 7, 2022) (compelling compliance with non-party subpoena where "informal" efforts to secure compliance failed and the non-party had "delayed compliance at times without sufficient explanation"); *see also HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *15 (S.D. Cal. Nov. 29, 2022) (compelling compliance with non-party subpoena where non-party failed to properly respond).

## II.   BACKGROUND

This lawsuit arose from two submarine telecommunications cables located in Lake Tahoe. Plaintiff alleges that Pacific Bell is responsible for the cables, that lead is being released from the cables, and that the lead is adversely impacting the water quality of Lake Tahoe. Dhillon Decl., Exhibit G.

Plaintiff asserts two claims against Pacific Bell. The first claim is for alleged violations of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). *Id.* The second is for alleged violations of California's Safe Drinking Water and Toxic Enforcement Act of 1986, commonly known as "Prop. 65," Health & Safety Code § 25249.5, et seq. *Id.* As noted above, Pacific Bell strongly disputes these claims. Indeed, testing by two environmental consulting firms has confirmed that any detectable lead levels near the cables are consistent with background levels in Lake Tahoe. *See* Dhillon Decl., Ex. H.

MTS is a privately held environmental consulting company based in San Marcos, California. According to MTS's website, the company's work includes performing environmental impact assessments, water sample collection, field sampling, and sample analysis. Declaration of Hariklia Karis ("Karis Decl."), Ex. 8.

Seth Jones, President, CEO, and Principal Consultant of MTS, and Monique Rydel Fortner, Senior Scientist and Senior Project Manager at MTS, have played a central role in this litigation from the beginning. Counsel for Plaintiff stated in a public interview that Seth Jones "brought [the case] to us on a platter." Dhillon Decl., Ex. F. Specifically, Jones dove to the bottom of Lake Tahoe, cut "a foot of [a lead-clad cable] off, and took it all apart, and weighed the various components, and determined that every foot of that cable contained three pounds of lead." *Id*. at 2. Jones then brought the cable to counsel for Plaintiff, the cable was placed in a "kiddie swimming pool" for testing, and, in the words of Plaintiff's counsel, "we had the evidence that we needed to bring the case." *Id*. After bringing the case to Plaintiff, Jones and Fortner separately contacted Pacific Bell and lobbied for MTS to be awarded the contract to remove the cables—even going so far as to submit a formal bid in January of 2022. Pacific Bell did not award the contract to MTS.

Later, Jones and Fortner coordinated with the Environmental Defense Fund (EDF) to conduct lead-cable testing in six regions across the United States, including sites at Lake Tahoe. Ultimately, the *Wall Street Journal* also became involved, and the testing expanded to a number of other sites. Jones and Fortner sought to use lead-cable testing at Lake Tahoe and other sites to convince "the federal government to assess the situation and take action." Karis Decl., Ex. 1. Jones and Fortner prepared a 66-page Lead Cable Investigation Report for EDF documenting their lead-cable testing at numerous sites. *Id*., Ex. 2.

Both at Lake Tahoe and at other sites, the "sampling" performed by Jones and Fortner suffers from fundamental deficiencies, including severe sampling bias. Indeed, Jones and Fortner conceded that "[s]ampling locations were ***chosen*** in part by their

likelihood *to show high lead levels*." Karis Decl., Ex. 2 at 5 (emphasis added). As explained by Tom Neltner, Senior Director of EDF, Jones and Fortner "collected samples of water, soil, and other materials with the objective of screening for lead by *focusing on worst case situations*. The goal was not to assess the risk." *Id*., Ex. 4 (emphasis added).

In July of 2023, the *Journal* published articles asserting that lead-clad cables in Lake Tahoe and elsewhere raise a public health concern. The articles prominently cite MTS, Jones and Fortner for their work on the very cables at issue in this case. Through MTS, Jones and Fortner "assisted the Journal in site visits, collecting the samples—sometimes through scuba diving—and tabulating the data," and "tested water samples from Lake Tahoe" for the *Journal* as recently as March 2023. Karis Decl., Ex. 6 at 5. One article published by the *Journal* even has video footage of Fortner inspecting a cable in Lake Tahoe with the caption: "A diver with Marine Taxonomic Services marks damaged areas of a Lake Tahoe cable in 2022." *Id.* MTS itself has been open and vocal about its longstanding role at Lake Tahoe and in working with the *Journal*, explaining on its LinkedIn page that its "work was critical" to the publication of the *Journal*'s articles on lead-clad cables, and that MTS had been working "tirelessly behind the scenes" for "18 months." *Id*., Ex. 7 at 1.

Given MTS's prominent role in the underlying dispute, Pacific Bell issued a subpoena to MTS on August 4, 2023, asking MTS to produce, *inter alia*, all documents and communications related to sampling, testing, and analysis performed on lead-clad telecommunications cables at Lake Tahoe and elsewhere. The subpoena requested compliance within 14 days of service. MTS received service of the subpoena on August 10, 2023, which made August 24, 2023 the deadline for production. Dhillon Decl., Ex A.

After MTS was served, Jones emailed counsel for Pacific Bell on August 15, 2023 to request a "6 week extension in the due date for producing materials" related to the MTS subpoena. *Id*., Ex. E at 4. Counsel for Pacific Bell responded on August 16,

agreeing to provide the six-week extension if Jones would accept service of a separate subpoena directed to him, personally. *Id.* Jones responded on August 22, insisting on an extension for MTS but refusing to accept service of his personal subpoena. *Id.* And in an email sent on August 23, Jones "object[ed] to the requests in the [MTS] subpoena because they are burdensome, not related to litigation and violate my first amendment rights." *Id.*, at 1. Accordingly, counsel for Pacific Bell declined to grant the requested extension.

After MTS's deadline to respond to the subpoena had passed, counsel for Pacific Bell sent Jones a meet-and-confer letter in a good-faith effort to resolve the differences that are the subject of this Motion. *Id.*, Ex. B. MTS provided no substantive response other than a boilerplate objection and a promise to retain counsel. *Id.*, Ex. C. Notwithstanding Pacific Bell's request, MTS has failed to identify their legal counsel, and Pacific Bell has yet to receive a single document. *Id.*; Dhillon Decl., ¶10.

### III.   ARGUMENT

Federal Rule of Civil Procedure 45(d)(2)(B)(i) authorizes a "serving party" to, "[a]t any time," "move the court for the district where compliance is required for an order compelling production." MTS is located in the Southern District of California, in San Marcos, California. Where, as here, a non-party has "delayed compliance at times without sufficient explanation," and where "informal" efforts to secure compliance have failed, courts have compelled compliance with non-party subpoenas. *See, e.g.*, *Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC*, 2020 WL 4336296, at *6 (S.D. Cal. July 28, 2020) (compelling compliance with a non-party subpoena where the non-parties "failed to respond to, comply with, or object to" the subpoenas, and they "failed to respond" to counsel's "efforts to arrange compliance"); *In re Motion to Compel Leslie Westmoreland's Compliance with Non-Party Subpoena*, 2022 WL 1478914, at *3 (E.D. Cal. April 7, 2022) (compelling compliance with non-party subpoena where "informal" efforts to secure compliance failed and the non-party had "delayed compliance at times without sufficient explanation").

Good cause exists for an order directing MTS to comply with the subpoena. Pacific Bell served the subpoena on August 10, and it has now been 27 days since the deadline for MTS's production passed on August 24. Counsel for Pacific Bell offered an extension in return for Jones's agreement to accept service of his personal subpoena, but Jones refused. After the deadline passed, Counsel for Pacific Bell continued to seek MTS's compliance through informal means, including a letter sent September 5 and emails sent September 11 and September 14. Dhillon Decl., Exs. B-C. Jones and MTS have nonetheless refused to produce any documents, or even to engage with counsel for Pacific Bell beyond asserting a handful of objections.

Those brief and unsubstantiated objections cannot excuse MTS's failure to comply with the subpoena and produce the highly relevant information in its possession. Jones merely stated that the requests in the subpoena "are burdensome, not related to litigation and violate my first amendment rights." *Id*., Ex. E.

***First***, the generalized and boilerplate nature of the objections is tantamount to making no objection at all. *See Bofi Fed. Bank v. Erhart,* 2016 WL 1644726, at *4 (S.D. Cal. Apr. 26, 2016) (holding that boilerplate objections are "inadequate and tantamount to not making any objection at all") (internal citation omitted); *see also Amazing Ins., Inc. v. DiManno*, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."); *Akkawi v. Sadr*, 2022 WL 4484056, at *2 (E.D. Cal. Sept. 27, 2022) ("General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim.").

***Second***, any "burden" argument has been waived. *Moore v. Chase, Inc.*, 2015 WL 4393031, at *5 (E.D. Cal. July 17, 2015) ("Failure to serve timely objections waives all grounds for objection [to subpoenas duces tecum], including privilege."); *see also Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) ("[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure") (internal citation omitted). Jones's bare-bones objection to

"burden" also fails where, as here, MTS has made no effort to detail or substantiate that burden: "When objecting on the basis that a discovery request is overly burdensome, the objecting party must affirmatively support its objection with compelling proof in the form evidentiary declarations or other evidence specifically describing the burden." *Bird v. Wells Fargo Bank*, 2017 WL 1213425, at *4 (E.D. Cal. Mar. 31, 2017). MTS did not do so. *See also Akkawi*, 2022 WL 4484056, at *2 (E.D. Cal. Sept. 27, 2022) ("If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections."). *Hall*, 2021 WL 1906464 at *5 (holding that "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections" and that "[a]rguments against discovery must be supported by 'specific examples and articulated reasoning.'") (internal citations omitted).

**Third**, Jones has no First Amendment privilege to assert. Moreover, as with burden, Jones utterly failed to provide any justification for asserting any such objection or privilege.

**Fourth**, Jones provides no support for his objection that the requests are "not related to litigation." Nor could he. In the words of Plaintiff's counsel, Jones and MTS "brought [this case] to us on a platter." Dhillon Decl., Ex. F. Jones cut a foot of lead cable, brought the cable to counsel for Plaintiff, conducted testing, and, in the words of Plaintiff's counsel, "we had the evidence that we needed to bring the case." *Id*. Jones and MTS then expanded their sampling beyond Lake Tahoe, using the same flawed methodology, and then publicized their testing in the *Wall Street Journal* articles that led to the reopening of this case.

### IV.  CONCLUSION

Pacific Bell requests that the Court grant this Motion. A proposed order has been submitted for the Court's consideration.

# LOCAL RULE 26.1(B) CERTIFICATION

Counsel for Pacific Bell attempted to meet and confer with Marine Taxonomic Services, Ltd. (MTS) on multiple occasions, including via email with MTS' president, Seth Jones, on September 5, 11, 14, and 18, 2023.  Notwithstanding these efforts, Mr. Jones refused to confer or otherwise respond substantively despite Pacific Bell's repeated attempts and notice that the instant Motion would be filed.

DATED:  September 21, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP
*s/ Vanessa Barsanti*
Attorney for Movant Pacific Bell Telephone Company
Email: vanessa.barsanti@kirkland.com